

# SUPREME COURT OF MISSOURI
## en banc

F.S.,                      )

            )

       Appellant,        )

            )

v.                        )       No. SC100558

            )

MISSOURI DEPARTMENT OF     )

CORRECTIONS, DIVISION OF     )

PROBATION AND PAROLE,       )

            )

       Respondent.      )

***Opinion issued February 11, 2025***

### APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
The Honorable Jon E. Beetem, Judge

F.S. appeals the circuit court's judgment upholding the constitutional validity of section 217.735.[1] F.S. argues section 217.735, which subjects her to lifetime monitoring by the Missouri Department of Corrections (the Department), is unconstitutional as applied to her circumstances. F.S. presented no meaningful evidence showing how section 217.735 is unconstitutionally applied in her particular circumstances, which is required for an as-applied challenge. Moreover, the facts she asserts in support of her argument are refuted by the circuit court's factual findings, which she does not challenge. The circuit court's judgment is affirmed.

---

[1] All statutory references are to RSMo 2016 unless otherwise indicated.

**Factual and Procedural Background**

On June 24, 2015, a jury found F.S. guilty of statutory sodomy of an 11-year-old victim in violation of section 566.062. F.S. is a female offender. The circuit court sentenced her to five years' imprisonment. She completed her sentence on September 9, 2019, and was placed on parole subject to the Department's supervision. F.S. completed her term of parole on June 6, 2020.

Pursuant to section 217.735.4, which requires "lifetime supervision" for certain serious offenders, F.S. is subject to lifetime mandatory electronic monitoring "that identifies and records [her] location at all times."[2] As such, the Department requires F.S. to wear an electronic ankle bracelet that interacts with a global positioning system (GPS). The GPS information the ankle bracelet gathers allows the Department to see where F.S. has traveled previously, as well as her location, direction, and speed of travel in real time. Though F.S.'s ankle bracelet automatically collects GPS information every minute, the Department reviews the GPS information only upon receiving an alert that she has entered a prohibited geographical area, termed as an "exclusion zone."

Using mapping software, the Department may delineate exclusion zones that an offender may not enter. Exclusion zones are not individualized for lifetime sex offenders such as F.S. Rather, the zones are automatically drawn based on statutory restrictions prohibiting certain offenders from entering specific areas, such as parks or schools. *See* §§

---

[2] Under section 217.735.5, the Department has discretionary authority, in appropriate cases as determined by a risk assessment, to terminate the supervision of an offender when the offender reaches the age of 65.

566.147-.150.  If the offender enters an exclusion zone, the mapping software alerts the Department.  Department staff then attempt to call the offender to advise her she has entered an exclusion zone and must vacate.  If the offender does not answer, the Department sends a message directly to her ankle bracelet, and she must acknowledge receipt by tapping the ankle bracelet.

The ankle bracelet measures 4.3 inches by 1.5 inches by 2.5 inches and weighs 6.1 ounces.  F.S. must ensure the ankle bracelet remains operative by charging it for approximately three hours per day, or until it is fully charged.  The ankle bracelet will operate for up to 60 hours on a single charge.  To charge the ankle bracelet, F.S. must place an external battery pack around the device until it is fully charged.  Because the battery pack is cordless, recharging the ankle bracelet does not limit F.S.'s freedom of movement; for example, she could go to the grocery store or mow the lawn while charging the ankle bracelet.

F.S. initiated a declaratory judgment action challenging the constitutional validity of the lifetime monitoring requirement found in section 217.735.4, on its face, as applied to her, and as applied to others in like circumstances, under the Fourth and Fourteenth amendments to the United States Constitution.  During trial, F.S. abandoned her facial challenge and argued only that section 217.735 violates her right and the rights of other similarly affected individuals to freedom from unreasonable searches and seizures.

During an October 16, 2023, bench trial, the circuit court received into evidence a 1.5-page joint stipulation of facts, three exhibits from the Department, and two exhibits from F.S.  The joint stipulation outlines F.S.'s residential location, her underlying sodomy

conviction, and the requirement that she wear an ankle monitor pursuant to section 217.735.4. The document also provides that F.S. does not need to notify the Department or obtain permission to travel outside Missouri unless she will be in another state for more than 45 days, in which case she must transfer her supervision to that state through an interstate compact. Relevant here, the parties further stipulated that, as of March 22, 2023, the Department had not received any violation reports regarding F.S.'s obligation to wear an ankle bracelet, nor had it received information indicating F.S. had reoffended or been arrested or prosecuted for any crime since she completed parole in 2020.

The Department's three exhibits consisted of its expert's curriculum vitae and a fact sheet and client guide for the ankle bracelet model F.S. wears. F.S.'s two exhibits consisted of the circuit court's order of lifetime supervision (providing she must comply with the order or face criminal sanctions) and a GPS lifetime supervision agreement (outlining the conditions of her supervision). F.S. signed both documents.

The circuit court also heard testimony from two Department witnesses. Dr. Jeffrey Kline, a licensed psychologist and certified forensic examiner, offered expert testimony based on his review of studies regarding sex crime recidivism and the effect of GPS monitoring on recidivism rates. Dr. Kline outlined a 2004 study finding a 13.7-percent recidivism rate out of a sample of 20,000 sex offenders; a 2009 study indicating an 11-percent recidivism rate out of a sample of 20,000 sex offenders; and a 2021 study demonstrating a 6.7-percent recidivism rate in a sample of 7,000 sex offenders. Dr. Kline testified that underreporting of sexual offenses is a recognized problem in this area of research. Lastly, Dr. Kline described several studies indicating GPS monitoring can deter

4

recidivism in sexual offenders. During cross examination, Dr. Kline acknowledged female sex offenders have a low risk of recidivism. He testified, however, that no research has been conducted to determine whether GPS monitoring reduces recidivism in female offenders specifically.

The Department's second witness, a Department official who oversees the monitoring of sex offenders, testified as to the conditions of F.S.'s lifetime supervision and the Department's process for monitoring such offenders. He also testified about the specific ankle bracelet model F.S. wears and described its dimensions, weight, and other features.

In its findings of fact, the circuit court found GPS monitoring can deter sex offenders from reoffending sexually in several ways. First, the use of exclusion zones can disrupt the "crime set-up phase" by isolating sex offenders from areas with potential victims such as schools, playgrounds, and previous victims' homes, thereby thwarting the "hunting process." Second, GPS monitoring can increase the certainty and swiftness of legal repercussions, which can deter sexual offenders from committing additional criminal offenses. The circuit court also favorably referenced a study Dr. Kline cited showing a reduction in recidivism in sex offenders monitored by GPS compared with a group of sex offenders who were not monitored. Finally, the circuit court found sex offenders with child victims tend to reoffend over a longer period of time after their release compared with other types of sex offenders.

The circuit court entered judgment for the Department and held the GPS monitoring imposed by section 217.735 is a reasonable search under the Fourth Amendment. The

5

circuit court acknowledged the reasonableness of a search depends on the totality of the circumstances, which requires "assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Samson v. California*, 547 U.S. 843, 848 (2006) (internal quotation omitted).

In conducting this assessment, the circuit court held F.S.'s expectation of privacy is "duly diminished by [her] status as a convicted felon generally and as a convicted sex offender specifically." *State v. Strudwick*, 864 S.E.2d 231, 244 (N.C. 2021). Given her sodomy conviction, the circuit court also noted section 589.400.4(3), RSMo Supp. 2018, requires F.S. to register as a sex offender for the remainder of her life. This mandatory registration makes publicly available information about F.S., such as her birthday, her physical description, her residential and work addresses, identifying descriptions of her vehicles, the nature and date of her sexual offense, and her sex offender tier level. In light of this public information, the circuit court found any intrusion of the GPS monitoring upon F.S.'s privacy to be slight. *See Belleau v. Wall*, 811 F.3d 929, 934-35 (7th Cir. 2016) ("The focus must moreover be on the *incremental* effect of the challenged statute on the plaintiff's privacy, and that effect is slight given the decision by [the state] to make sex offenders' criminal records and home addresses public.").

Next, assessing the government interest at stake, the circuit court held the state clearly has a legitimate interest in protecting children and other potential victims of sexual offenses. Referencing its findings as to the efficacy of GPS monitoring in deterring

6

recidivism in sex offenders, the circuit court found section 217.735 furthers the state's interest in protecting future victims and preventing sex offender recidivism.

F.S. appeals. This Court has exclusive jurisdiction because F.S. challenges the constitutional validity of a state statute. Mo. Const. art. V, § 3.

**Standard of Review**

The constitutional validity of a statute is a question of law this Court reviews *de novo*. *Weinschenk v. State*, 203 S.W.3d 201, 210 (Mo. banc 2006). "Because a statute is cloaked in a presumption of constitutionality, an appellate court may find the statute unconstitutional only if it clearly contravenes a specific constitutional provision." *Id.*

The party asserting the constitutional challenge has the burden of proving the statute is clearly and undoubtedly unconstitutional. *Black River Motel, LLC v. Patriots Bank*, 669 S.W.3d 116, 123 (Mo. banc 2023). "An as-applied challenge requires Appellants **to show** the statute was unconstitutionally applied **to their individual circumstances**." *Id.* (emphasis added).

Moreover, this Court reviews the evidence in the light most favorable to the circuit court's judgment. *Weinschenk*, 203 S.W.3d at 210. "[T]his Court defers to the trial court's view of the evidence and will not second guess the trial court on the contested facts." *White v. Dir. of Revenue*, 321 S.W.3d 298, 312 (Mo. banc 2010).

**Analysis**

F.S. argues section 217.735 is unconstitutional as applied to her circumstances because it violates her rights under the Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, to be free from

7

unreasonable searches and seizures.[3]  F.S. argues the circuit court erred in its balancing of the *Samson* factors; specifically, she argues the state's interest in protecting children and other potential victims is not furthered in her case because she can demonstrate that she does not pose a risk of reoffending.  F.S. fails to present any particularized evidence to support this proposition, however, which is fatal to her as-applied challenge.  *Black River Motel*, 669 S.W.3d at 123.  Moreover, the facts upon which she relies to support her argument are refuted by the circuit court's factual findings, which she does not challenge.

During opening statements, F.S. told the circuit court she would not be presenting evidence, which she acknowledged was unusual for a Fourth Amendment challenge.  She indicated, instead, she would be relying on her petition, the joint stipulation of fact, and various statutory provisions of which she requested the circuit court take judicial notice.  Despite the intentional brevity of her case-in-chief, she nonetheless argues the evidence shows she poses little to no risk of reoffending.  This Court disagrees.

F.S. first points to the fact that she has not reoffended or been re-arrested since completing parole.  This fact, however, does little to show F.S. poses a low risk of reoffending ***in the future***.  To the contrary, the circuit court found, in line with Dr. Kline's expert testimony, that sex offenders generally pose a risk of reoffending and that sex

---

[3] In her briefing to this Court, F.S. occasionally references the rights of other similarly affected individuals, which the state argues obfuscates the scope of her constitutional challenge and renders her brief defective.  F.S.'s point relied on, however,  references only an as-applied challenge, and the remainder of her brief makes clear this is the crux of her argument.  As such, this opinion is limited to addressing her as-applied challenge and does not address the constitutional validity of section 217.735 as it relates to other individuals. The state's request to dismiss F.S.'s appeal for this reason is denied.

offenders with child victims specifically tend to reoffend over a longer period of time than other types of sex offenders. F.S. does not challenge these factual findings, and this Court must defer to the circuit court's view of the evidence.[4] *White*, 321 S.W.3d at 312.

F.S. also argues Dr. Kline's cross examination testimony established that female sex offenders such as herself pose a low risk of reoffending, such that the GPS monitoring section 217.735 requires does nothing to reduce recidivism in her case. Dr. Kline's cross-examination testimony, however, related to recidivism rates of female offenders generally; he offered no opinion as to F.S.'s particular risk of reoffending. In fact, he testified that gender is but one of many factors to consider in assessing an individual's particular risk of recidivating. While F.S.'s status as a female offender may indicate a lower risk of reoffending (though this Court declines to so hold under the appropriate standard of review), other factors in her case, such as the fact that her crime involved a child victim, for example, may indicate otherwise. Dr. Kline's brief cross-examination testimony is insufficient to constitute the particularized evidence required to lodge an as-applied challenge. Moreover, the circuit court was not persuaded by Dr. Kline's brief statement on cross-examination and chose to credit his testimony on direct that GPS monitoring can reduce the risk of sex offender recidivism. Again, F.S. does not challenge this finding.

---

[4] F.S. also asserts section 217.735's intrusion on her privacy is profound, rather than "slight" as the circuit court found. She points to no evidence adduced at trial, however, that renders the circuit court's finding clearly erroneous. This argument is without merit.

9

In the absence of *any* evidence of F.S.'s individual circumstances, this Court cannot assume, against a presumption of constitutional validity and unchallenged factual findings supporting such validity, that section 217.735 is unconstitutional as applied to her case.[5] *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 371 (2010) (rejecting an as-applied challenge in part because "there has been no showing that, as applied in this case, these requirements would impose a chill on speech or expression").

**Conclusion**

For the reasons set forth above, the circuit court's judgment is affirmed.

_____
ROBIN RANSOM, JUDGE

All concur.

---

[5] F.S. similarly argues section 217.735's requirement of lifelong surveillance with no opportunity for review until age 65 is unreasonable. Beyond the fact that F.S. is a female offender who has not yet reoffended, F.S. again provides no evidence or argument of her *particular* circumstances to show how this component of section 217.735 applies unreasonably in her case. The Court rejects this argument.